UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Eugene Lionel Boulanger, | Case No. 23-cv-3696 (KMM/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| Jonathan Holets, | |
| Defendant. | |

Plaintiff Eugene Lionel Boulanger alleges that Jonathan Holets, the Deputy County Attorney of St. Louis County, violated his right to due process, deprived him of his rights or privileges under the color of law, and committed prosecutorial misconduct while Mr. Holets was prosecuting a state court case in which Mr. Boulanger was a victim. This matter is before the Court on Defendant Holets' Motion for Judgment on the Pleadings. ECF No. 14. For the reasons addressed below, the motion is granted.

I.      **BACKGROUND**[1]

Although Mr. Boulanger submitted a Complaint and many additional documents and filings, it is difficult to determine both what claims he seeks to raise and what facts he avers in support of those claims. Nonetheless, the Court attempts a summary of the relevant facts.

---

[1] This background section draws from factual allegations in the complaint as well as the relevant events established by the transcript of Ms. Duffrin's plea agreement hearing, and Mr. Boulanger's document titled "Theft by Swindle 609.52(2)(a)(4)," both of which were attached to Mr. Boulanger's Complaint. ECF Nos. 1-4; 1-7.

### *Ms. Duffrin's Theft by Swindle*

Starting in the fall of 2015, Mr. Boulanger began giving money in the form of cash and occasionally checks to Tracy Lynn Duffrin ("Duffrin") after Ms. Duffrin informed him that she needed money to pay for medical expenses and medications. ECF No. 1-7. And in the spring of 2016, Mr. Boulanger began asking his brother, Perley Boulanger ("Perley"), to contribute to Ms. Duffrin as well. Ms. Duffrin informed the brothers that she was suing a college and she would repay the money they gave her, with interest, from the portion of the settlement she was expecting in that litigation. ECF No. 1-7; Ryan Temple Aff., ECF No. 1-4 at 54 ¶ 3. Things did not go as planned.

In September of 2018, the Duluth Police Department received a complaint that Mr. Boulanger and Perley were victims of fraud and had given Ms. Duffrin between $160,000 and $180,000 or more between 2015 and 2017. Temple Aff. ¶ 2. The brothers informed the Duluth Police Department that the two collectively provided Ms. Duffrin with the large sums to cover medical expenses, and advised that she promised to repay them with the proceeds of a settlement. ECF No. 1-7. Law enforcement interviewed Ms. Duffrin several times. She admitted that she borrowed money from the brothers, but she denied that the sum was anywhere near as large as claimed. *Id.* The brothers did not have documentation of most of the money provided to Ms. Duffrin; aside from a few personal checks, they mostly gave her cash. Temple Aff. ¶ 2.

On March 7, 2019, Mr. Boulanger and Perley commenced a civil lawsuit against Ms. Duffrin. *Boulanger v. Duffrin*, 69DU-CV-19-678 (St. Louis Cnty. Dist. Ct. Mar. 7, 2019) (Compl.). At the end of the case, the brothers were awarded monetary damages in

2

the amount of $160,000.00 against Ms. Duffrin. *Id.* Ms. Duffrin lives on less than $2,000.00 a month and is likely unable to repay the brothers any money awarded in the civil suit. ECF No. 1-7 at 2.

On March 7, 2022, Ms. Duffrin was criminally charged with theft by swindle under Minn. Stat. § 609.52, subd. 2(a)(4) in state district court in St. Louis County. *State v. Duffrin*, 69DU-CR-22-651 (St. Louis Cnty. Dist. Ct. Mar. 7, 2022) (Indict.). An investigation into Ms. Duffrin failed to reveal any pending sexual harassment lawsuit that involved Ms. Duffrin. ECF No. 1-7 at 2. However, the investigation into Ms. Duffrin did discover that between 2015 and 2017—the period of the swindle—Ms. Duffrin lost nearly $170,000.00 between three local casinos. *Id.* In 2016 alone, Ms. Duffrin lost over $108,000.00. *Id.* Ms. Duffrin provided no explanation as to her extensive gambling losses nor the source of money that accounted for her gambling losses. *Id.*

### *Ms. Duffrin's Plea Agreement Hearing*

On November 28, 2022, Ms. Duffrin pled guilty to "felony theft-indifferent to owner's rights" in violation of Minn. Stat. § 609.52, subd. 2(a)(5)(i). Plea Hr'g Tr., ECF No. 1-4 at 26. Mr. Holets was the prosecutor in the matter. *Id.* Mr. Holets advised the court that the state extended an offer to Ms. Duffrin because she would be pleading guilty to a felony-level offense that treats her like others who are similarly situated. *Id.* at 28. According to the state, Ms. Duffrin's lack of criminal history warranted some concessions in resolving the case with a favorable plea deal. *Id.* at 28–29. Furthermore, the state determined that Ms. Duffrin was arguably herself a vulnerable adult whose caseworkers

3

were stealing funds from her, which complicated the state's case against her and provided further mitigation. *Id.* at 31.

In addition, the state reduced the amount of restitution Ms. Duffrin would owe to $1,498.00, in part because this figure was documented with personal checks. *Id.* 29–30, 40–41. The state also noted that the $160,000 civil judgment the brothers received would help compensate their losses. *Id.* at 31–32. The plea agreement Ms. Duffrin entered was for a stay of adjudication, and the main condition for the stay was that Ms. Duffrin pay restitution in the amount of $2.00 shy of $1,500.00 within six months. *Id.* at 34.

Throughout the course of the case, Mr. Boulanger and Perley expressed dissatisfaction with the manner in which Mr. Holets performed his prosecutorial duties. As Mr. Holets described during the plea hearing:

> We have two, not just one but two, very unhappy Victims in this case. Frankly, they've been unhappy with me throughout the entire -- the entire case. They are asking for a remedy that cannot be given to them in a Criminal Court. They are asking for a charge of contract fraud; they are under the belief still that this theft has occurred through a contract, which of course gives me in the criminal process a bit of pause. I think that's a probable defense or a possible defense if that is true. I also -- I don't believe it's true. I believe they are under the distinct belief that this is -- that this was a contract, although there's no written contract, there was apparently something written on a -- on a napkin, a cocktail napkin.

*Id.* at 28.

Among Mr. Boulanger's concerns is his claim that Mr. Holets misrepresented the facts surrounding the contract that Mr. Boulanger "believe[s] is the basis of the swindle." ECF No. 1-4 at 12–13. In addition, the brothers were generally unhappy with the charges

4

brought against Ms. Duffrin, her plea agreement, and Mr. Holets' prosecution of the matter, and Mr. Boulanger seeks millions of dollars in damages. *Id.* at 29, 33.

### *Mr. Boulanger's Lawsuits Against Mr. Holets*

In July 2023, Boulanger commenced a civil action against Mr. Holets in state district court in St. Louis County. Campanario Decl., Ex. A, ECF No. 17-1. The claim-related portion of Mr. Boulanger's form complaint stated only "swindle of 'a contract,'" and the relief-related portion said "to be determined with an attorney 'a contract.'" *Id.* Mr. Holets moved to dismiss the complaint under Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted. *Id.*, Ex. B., ECF No. 17-2. Mr. Boulanger voluntarily dismissed the action without prejudice under Minn. R. Civ. P. 41.01(a) before the motion was heard, in October 2023. *Id.*, Exs. C–E, ECF Nos. 17-3–17-5.

A few weeks later, Boulanger commenced this action against Holets in state district court in St. Louis County, seemingly claiming prosecutorial misconduct and seeking damages in the amount of $8 million. ECF No. 1-1. Mr. Holets removed the action to this Court under 28 U.S.C. § 1441(a), ECF No. 1, answered the complaint, ECF No. 6, and filed the pending Motion for Judgment on the Pleadings, ECF No. 14.

### *Plaintiff's Claims*

In his Motion for Judgment on the Pleadings, Mr. Holets construed Mr. Boulanger's claims as generally alleging that Mr. Holets, acting under color of law for the State of Minnesota, "knowingly" and "willfully" amended a contract that Mr. Boulanger believes is the basis of the swindle, in violation of 18 U.S.C. § 242 and 42 U.S.C. § 1983. In addition, Holets understands Mr. Boulanger to be alleging prosecutorial misconduct in violation of

§ 1983. Finally, Mr. Holets identifies that Mr. Boulanger raises a claim related to his Fifth Amendment due process rights, pursuant to 42 U.S.C. § 1983. Although Mr. Boulanger responded to the Motion, he did not dispute the Holets' characterization of his claims.

II.     Analysis

Mr. Holets asks the Court to grant judgment on the pleadings in his favor because (1) Boulanger's claims are based on a constitutional provision that applies only to the federal government; (2) his claims are based on alleged violations of a criminal statute for which there is no private cause of action; and (3) this is an action against Mr. Holets in his official capacity—that is, an action against St. Louis County—and the complaint does not allege that the complained-of injury is attributable to a county policy or custom, as required under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Court agrees with several of Mr. Holets' arguments and finds that judgment on the pleadings is appropriate. Simply put, Mr. Boulanger does not state a claim upon which relief can be granted.

**A. Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). The distinction between a Rule 12(c) motion and a 12(b)(6) motion is "purely formal." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). "To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to state a claim to relief that is plausible on its face." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quotation omitted). The facts alleged in the

6

complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, the court takes all factual allegations in the complaint as true and construes all reasonable inferences therefrom in favor of the plaintiff. *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019). However, the court does not take as true wholly conclusory allegations or the legal arguments offered by the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). Although courts construe a *pro se* plaintiff's complaint liberally, the complaint must allege sufficient facts to support the plaintiff's claims. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### B. Fifth Amendment Due Process Claim

First, Mr. Holets argues that Mr. Boulanger's Complaint should be dismissed because he erroneously relies on the Fifth Amendment to the Constitution. The Court agrees in part and agrees that Mr. Holets fails to state a constitutional claim.

The Fifth Amendment provides that "[no] person shall be . . . deprived of life, liberty, or property, without due process of law. . . ." U.S. Const. Amend V. But its protections apply direct to federal actors and Plaintiff has identified only state actors as defendants. *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009) ("Fifth Amendment's Due Process Clause applies only to the federal government or federal actions"). However, Mr. Boulanger also references the Fourteenth Amendment in his

pleadings: "The . . . Fourteenth Amendment uses the same eleven words of a legal obligation of all states. . . ." ECF No. 1-4 at 8. This reference, particularly in light of his pro se status, is sufficient to allege that Mr. Holets, a state actor, violated Mr. Boulanger's right to due process under the Fourteenth Amendment. *See Lockhart–Beilke v. Peterson*, No. 13-cv-1208 (JRT/BRT), 2015 WL 5718910, at *7 n.10 (D. Minn. Sept. 29, 2015) ("The complaint explicitly references the Fourteenth Amendment, noting that the Fifth Amendment is made applicable to the states via the Fourteenth Amendment. . . . That reference is sufficient to make clear that the complaint is asserting its due process claims via the Fourteenth Amendment.") (citations omitted). Moreover, when courts liberally construe *pro se* pleadings, their tasks are to place the non-lawyers factual allegations into the most relevant legal context given the lack of familiarity with legal niceties generally to be expected of those untrained in the law. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."). Accordingly, while the Court agrees that Mr. Boulanger cannot state a plausible Fifth Amendment claim against a state actor, the essence of his claim should not be dismissed on such a hyper-technical basis.

However, even when considered under the proper constitutional provision, Mr. Boulanger still fails to state a claim that Mr. Holets violated his due process rights. To allege a due process violation, a plaintiff must first plead a recognized liberty or property interest of which a person has been deprived, and if the plaintiff does so, "we ask whether

8

the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011); *Wagner v. Scheirer*, No. 23-cv-1162 (ECT/LIB), 2024 WL 264660, *7 (D. Minn. 2024) (noting that a property interest must be based on a "'legitimate claim of entitlement' to the property") (quoting *Bd. of Regents of State Colls. V. Roth*, 408 U.S. 564, 577 (1972)). Mr. Boulanger does not identify any such right. Even accepting all of Mr. Boulanger's factual allegations as true, he fails to adequately allege any cognizable property or liberty interest in having Mr. Holets achieve a particular outcome in Ms. Duffrin's case. And the Supreme Court has held that crime victims do not have such an interest. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Parkhurst v. Tabor*, 569 F.3d 861, 866–67 (8th Cir. 2009) (rejecting a claim brought by a victim based on failure to prosecute). The Court dismisses Mr. Boulanger's Fourteenth Amendment claim with prejudice.

### C.  18 U.S.C. § 242 Claim

The Defendant next seeks judgment on the pleadings because Mr. Boulanger bases his claims in part on 18 U.S.C. § 242, which does not allow for a private right of action. The Court agrees. "Alleged violations of 18 U.S.C. § 242 cannot be redressed by a private civil action." *Nasuti v. Holm*, No. 3:22-CV-00025 (RGE/SBJ), 2022 WL 18779981, at *7 (S.D. Iowa Oct. 31, 2022), *aff'd,* No. 22-3537, 2023 WL 3244610 (8th Cir. May 4, 2023) (per curiam); *Wolf v. Hoene Ridge Subdivision*, No. 4:15CV1140 RLW, 2015 WL 8665406, at *2 (W.D. Mo. Dec. 11, 2015) (dismissing civil cause of action alleging violation of 18 U.S.C. § 242 for failure to state a claim because the statute does not afford

a private cause of action), *aff'd,* 669 F. App'x 345 (8th Cir. 2016) (per curiam). The Court dismisses Mr. Boulanger's § 242 claim against Mr. Holets with prejudice.

### D. Section 1983 *Monell* Claim

In addition to failing to plead the elements of a cognizable due process claim, Mr. Boulanger's §1983 claim fails for an additional reason. To plead a § 1983 action, a plaintiff must allege that a person acting under color of state law violated his or her constitutional rights. 42 U.S.C. § 1983; *Iqbal*, 556 U.S. at 676. However, government officials have qualified immunity from § 1983 claims. As a result, plaintiffs must show that the defendant engaged in conduct that violated a constitutional right and that, at the time of the alleged violation, the right was clearly established. *Tennant v. Anderson*, 453 F. App'x 657, 658 (8th Cir. 2011) (per curiam) (citing *Yellow Horse v. Pennington Cnty.*, 225 F.3d 923, 927 (8th Cir. 2000)).

If a local-government official is named as a defendant in a § 1983 complaint and the complaint does not "expressly and unambiguously state" that the official is being sued in his individual capacity, "the suit is construed as being against the [official] in [his] official capacity" alone. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). A suit against a local government official in his official capacity amounts to a suit against the local government itself. *Hall v. Higgins*, 77 F.4th 1171, 1178 (8th Cir. 2023). But the vehicle for suing a municipality is a narrow one.

In *Monell*, the Supreme Court held that although § 1983 refers to violations of constitutional rights by any "person" acting under color of state law, a plaintiff can bring a suit against a municipality "or other local government unit" when an official policy or

custom was the moving force for the alleged violation. 436 U.S. at 690–91; *see also Sample v. City of Woodbury*, 836 F.3d 913, 917 (8th Cir. 2016) (same). Under a *Monell* claim, "[s]ection 1983 liability may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (cleaned up). To show that a failure to train or supervise was the moving force behind a constitutional violation, the plaintiff must allege that the "municipality's failure to adopt adequate safeguards was the product of deliberate indifference to the constitutional rights of its inhabitants." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007).

Mr. Boulanger's complaint does not plausibly allege any official-capacity claim against Mr. Holets, which would be treated as a claim against his public employer, St. Louis County. A government unit such as the county may be held liable under § 1983 for a constitutional violation that resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train. *Atkinson*, 709 F.3d at 1214. A plaintiff must establish causation, *i.e.*, that the policy, custom, or failure to train was the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989); *Monell*, 436 U.S. at 691. Mr. Boulanger's complaint does not identify or describe any policy, custom, or training practices of St. Louis County, let alone plausibly allege that they led to the deprivation of his rights. There are no factual allegations from which the Court could infer that any alleged harm to Mr. Boulanger was caused by a county policy, custom, or failure to train.

Moreover, to the extent the Court can discern the nature of Mr. Boulanger's claims against Mr. Holets, such claims are barred by prosecutorial immunity. *Yisrael v. Reding*, No. 20-cv-1744 (WMW/DTS), 2021 WL 2593475, at *3 (D. Minn. May 3, 2021) ("Prosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and presenting the state's case insofar as the conduct is intimately associated with the judicial phase of the criminal process."), *R&R adopted,* No. 20-cv-1744 (WMW/DTS), 2021 WL 2592384 (D. Minn. June 24, 2021); *see also Sample*, 836 F.3d at 916 ("Because the immunity depends upon the functional nature of the prosecutor's activities, allegations of improper motive in the performance of prosecutorial functions will not defeat its protection."). The Supreme Court has adopted a "functional approach" to absolute immunity for prosecutors, and that analysis considers the association between the conduct alleged and the prosecutor's duties as an advocate for the governmental unit he or she represents. *See Burns v. Reed*, 500 U.S. 478, 486 (1991); *see also Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process."). Here, the Complaint and attached documents establish that Mr. Boulanger's grievances relate to Mr. Holet's actions in his prosecutorial capacity in the state criminal proceedings. Such claims are barred by prosecutorial immunity. *Varela v. Hill*, No. 4:23-cv-01016-SEP, 2024 WL 1328265, at *8 (E.D. Mo. Mar. 28, 2024) (dismissing Fourteenth Amendment claims against a prosecuting attorney for her "decision not to initiate prosecution" against another).

The Court dismisses Mr. Boulanger's *Monell* claim against Mr. Holets with prejudice.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**

1. Defendant Jonathan Holets' Motion for Judgment on the Pleadings [ECF No. 14] is **GRANTED** as set forth in this Order.

2. Plaintiff Eugene Lionel Boulanger's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE**.

**Let Judgment be entered accordingly.**

Date: September 19, 2024         *s/Katherine Menendez*
                                  Katherine Menendez
                                  United States District Judge